**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| El Capitan HOA, | ) | No. CV-12-631-PHX-SMM |
| Plaintiff, | ) ) | |
| vs. | ) ) | **MEMORANDUM OF DECISION AND ORDER** |
| State Farm Fire and Casualty Co., | ) ) | |
| Defendant. | ) ) ) | |
| | ) | |

Pending before the Court is Defendant State Farm Fire and Casualty Co.'s ("State Farm") motion for partial summary judgment, which is fully briefed. (Docs. 41-42, 49-50, 52-53.) State Farm moves for partial summary judgment on Plaintiff El Capitan HOA's ("El Capitan") claims for breach of the covenant of good faith and fair dealing ("bad faith") and punitive damages. After considering the parties' briefing and having determined that oral argument is unnecessary,[1] the Court will grant State Farm's motion for partial summary judgment on bad faith and punitive damages and set this matter for trial on El Capitan's breach of contract claim.

## BACKGROUND

El Capitan is a condominium owners association consisting of 22 condominium

---

[1]State Farm's request for oral argument is denied because the parties have had an adequate opportunity to present their written arguments, and oral argument will not aid the Court's decision. See Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev., 933 F.2d 724, 729 (9th Cir. 1991).

owners in 11 buildings along El Capitan Circle in Sun City, Arizona.  (Doc. 42-1 at 15.) These condominium units experienced wind and hail damage from a storm occurring on October 5, 2010.  (Doc. 41 at 2.)  On behalf of El Capitan, Dr. James Longo asked Jasper Contractors ("Jasper") to inspect his roof.  (Doc. 42-1 at 15.)   When Jasper reported significant hail damage to his roof, Dr. Longo authorized Jasper to conduct roof inspections on all 22 units. (Id. at 8.)  Jasper inspected the other roofs that were part of El Capitan from February 17, 2011, through February 18, 2011, and provided damage estimates. (Id. at 29-49.)[2] Following Jasper's roof inspection and damage estimates, El Capitan filed an insurance claim with State Farm for hail damage. (Id. at 11.) On February 17, 2011, State Farm assigned the claim to Adjuster Christina Wagner and an inspection of the roofs was set for March 7, 2011. (Id. at 15.)  Prior to State Farm's inspection, El Capitan did not provide State Farm with Jasper's estimates.  (Id. at 20.)  At the March 7, 2011,[3] inspection, Ms. Wagner met with Rodney Belt from Jasper. (Id. at 16.) She inspected all 11 buildings for wind and hail damage and estimated the total damage to be $6,129.68. (Id. at 18-19; see also id. at 50-63.[4])  Ms. Wagner's inspection of the roof included making ten-foot test squares to test for hail damage. (Id. at 16-19; see also id. at 66.) Following the inspection, Ms. Wagner discussed her findings with Dr. Longo and advised that her estimate would follow by mail.

---

[2]The Court's courtesy copy of the exhibits in support of State Farm's Statement of Facts includes additional pages documenting Jasper's inspection and damages estimate. The Court will order State Farm to refile on CM/ECF a complete copy of Document 42, Exhibit 5.

[3]State Farm acknowledges that the claim file does not reflect the correct date of Ms. Wagner's inspection of the roofs. (Doc. 41 at 3.) Evidently, Ms. Wagner copied her claim notes into a wrong location and had to retrieve them. (Id.) The correct date, March 7, 2011, is verified by a March 8, 2011 letter from Jasper, who objected to Ms. Wagner's findings and her damage estimate. (Doc. 42-1 at 71.) This does not, however, create a disputed material fact.

[4]The Court's courtesy copy of the exhibits in support of State Farm's Statement of Facts includes additional pages documenting Ms. Wagner's inspection and estimate. The Court will order State Farm to refile on CM/ECF a complete copy of Document 42, Exhibit 6.

1   (Id. at 18.) In accordance with Ms. Wagner's estimate, State Farm issued payment to El
2   Capitan HOA in the amount of $6,129.68, the actual cash value of the loss. (Id. at 19.)

3        On March 15, 2011, State Farm received a letter from Jasper indicating disagreement
4   with Ms. Wagner's estimate. (Id. at 71.) Ms. Wagner advised Dr. Longo that they received
5   the letter from Jasper, but that a second inspection was not warranted based on Jasper's word
6   without the support of a written estimate. (Id. at 20.) Ms. Wagner also suggested that Dr.
7   Longo call back after he had a chance to review State Farm's written estimate. (Id.) Dr.
8   Longo agreed to call back the following week. (Id.)  On March 28, 2011, Dr. Longo called
9   State Farm and requested a second inspection. (Id.) State Farm advised him that it still did
10  not have Jasper's written estimate, something that was needed in order to move forward with
11  a second inspection. (Id.)  On April 5, 2011, State Farm received a scanned copy of the
12  Jasper estimate via email from El Capitan's State Farm agent, Bill Johnson. (Id. at 21.)  The
13  estimate from Jasper totaled $186,956.01 and included a complete roof replacement on every
14  building. (Id.)

15       On April 16, 2011, the file was reassigned to another adjuster for a second inspection.
16  (Id. at 22.) On April 21, 2011, State Farm Adjuster Steve Rinks telephoned all parties to set
17  up the inspection for May 6, 2011. (Id.)  On May 6, 2011, Mr. Rinks attended the inspection
18  with Field Claim Representative James Willoughby, and they were joined at the site by
19  Reuben from Jasper.  (Id. at 22-24.)  They inspected all 11 buildings for storm-related
20  damage that had not been previously identified by Ms. Wagner. (Id.)  They found $1,542.43
21  in additional wind and hail related damage, and State Farm issued an actual cash value
22  payment in the amount of $1,317.90. (Id.)

23       On October 16, 2011, on behalf of El Capitan, State Farm received a demand letter
24  for $285,000. (Id. at 24; id. at 73-75.) Accompanying the demand letter was a roofing
25  damage estimate from Austin Insurance Services, Inc. ("AIS") for $245,260.04. (Doc. 50-3
26  at 2-96.) On December 5, 2011, State Farm responded and stated their intention to have an
27  independent roofing expert inspect the properties for the purpose of giving El Capitan's claim
28  additional consideration. (Doc. 42-1 at 81.)  Thereafter, State Farm retained the Klingler

1  Group as its roofing expert and on December 15, 2011, and December 16, 2011, Stephen

2  Klingler inspected the roofs at El Capitan for storm damage.  (Id. at 85-99.)  Mr. Klingler

3  found no hail damage to any of the roofs' composite shingles. (Id.)  State Farm reviewed Mr.

4  Klingler's report and determined that all proper payments had already been made under the

5  policy. (Id. at 101.)  On February 22, 2012, El Capitan filed the instant lawsuit in Maricopa

6  County Superior Court, alleging breach of contract, bad faith and punitive damages. The case

7  was removed to district court on March 23, 2012.  (Doc. 1.)

8                                    **STANDARD OF REVIEW**

9        I.  Partial Summary Judgment

10       Upon motion at any time, a party defending against a claim may move for "partial

11  summary judgment," that is, "summary judgment in the party's favor as to . . . any part

12  thereof." Fed. R. Civ. P. 56(b).  A court must grant summary judgment if the pleadings and

13  supporting documents, viewed in the light most favorable to the nonmoving party, "show that

14  there is no genuine issue as to any material fact and that the moving party is entitled to

15  judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S.

16  317, 322-23 (1986); Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir.

17  1994).   Substantive law determines which facts are material.  See Anderson v. Liberty

18  Lobby, 477 U.S. 242, 248 (1986); see also Jesinger, 24 F.3d at 1130.  "Only disputes over

19  facts that might affect the outcome of the suit under the governing law will properly preclude

20  the entry of summary judgment." Anderson, 477 U.S. at 248.  The dispute must also be

21  genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for

22  the nonmoving party." Id.; see Jesinger, 24 F.3d at 1130.

23       A principal purpose of summary judgment is "to isolate and dispose of factually

24  unsupported claims." Celotex, 477 U.S. at 323-24.  Summary judgment is appropriate

25  against a party who "fails to make a showing sufficient to establish the existence of an

26  element essential to that party's case, and on which that party will bear the burden of proof

27  at trial." Id. at 322; see also Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir.

28  1994).  The moving party need not disprove matters on which the opponent has the burden

1    of proof at trial.  See Celotex, 477 U.S. at 323.  The party opposing summary judgment "may

2    not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth

3    specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); see

4    Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 585-88 (1986); Brinson v. Linda

5    Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995).  "[T]he purpose of Rule 56 is to

6    enable a party who believes there is no genuine dispute as to a specific fact essential to the

7    other side's case to demand at least one sworn averment of that fact before the lengthy

8    process of litigation continues."  Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 888-89

9    (1990).

10    II.  Bad Faith

11    A federal court sitting in diversity applies state substantive law.  See Hambleton Bros.

12    Lumber Co. v. Balkin Enterprises, Inc., 397 F.3d 1217, 1227 (9th Cir. 2005).  Thus, this

13    Court applies Arizona law to the state-law claims at issue.  "An insurance contract is not an

14    ordinary commercial bargain; implicit in the contract and the relationship is the insurer's

15    obligation to play fairly with its insured."  Zilisch v. State Farm Mut. Auto. Ins. Co., 196

16    Ariz. 234, 237, 995 P.2d 276, 279 (2000) (further quotation omitted).  Although insurers do

17    not owe fiduciary duties to their insureds, they do owe some duties of a fiduciary nature

18    including equal consideration, fairness and honesty.  Id.  The insurer is obligated to conduct

19    a prompt and adequate investigation, to act reasonably in evaluating the insured's claim, and

20    to promptly pay a legitimate claim.  Id. at 238, 995 P.2d at 280.

21    "An insurer acts in bad faith when it unreasonably investigates, evaluates, or processes

22    a claim (an 'objective' test), and either knows it is acting unreasonably or acts with such

23    reckless disregard that such knowledge may be imputed to it (a 'subjective' test)."  Nardelli

24    v. Metro. Group Prop. & Cas. Ins. Co., 230 Ariz. 592, 597-98, 277 P.3d 789, 794-95 (App.

25    2012) (citing Zilisch, 196 Ariz. at 238, 995 P.2d at 280).  Both the objective and subjective

26    elements of bad faith are applied to the insurer's evaluation of the claim and to the insurer's

27    claims handling process.  Id.

28    The insurer may challenge claims which are fairly debatable.  See Noble v. National

Amer. Life Ins. Co., 128 Ariz. 188, 190, 624 P.2d 866, 868 (1981).  Where the insurance company has a reasonable basis for denying or failing to process a claim, or where the claim is fairly debatable, a cause of action for bad faith will not lie.  See Lasma Corp. v. Monarch Ins. Co. of Ohio, 159 Ariz. 59, 63, 764 P.2d 1118, 1122 (1988).  To determine fair debatability, the Court first looks to whether the insurer's actions were objectively reasonable, which is based upon a simple negligence standard–whether the insurance company acted in a manner consistent with the way a reasonable insurer would be expected to act under the circumstances. See Trus Joist Corp. v. Safeco Ins. Co. of Am., 153 Ariz. 95, 104, 735 P.2d 125, 134 (App. 1986).  If the insurer acted objectively unreasonably, then the Court moves to the subjective inquiry and determines if the insurer knew or was conscious that its conduct was unreasonable.  Id.  Generally, the insurer's subjective "belief in fair debatability is a question of fact to be determined by the jury." Zilisch, 196 Ariz. at 280, 995 P.2d at 279 (further citation and quotation omitted).  However, if the insured offers no significantly probative evidence that calls into question the insurer's subjective belief regarding fair debatability, the court may rule on the issue as matter of law. See Knoell v. Metropolitan Life Ins. Co., 163 F. Supp.2d 1072, 1076 (D. Ariz. 2001); see also Aetna Cas. & Sur. Co. v. Superior Court In & For Cnty. Of Maricopa, 161 Ariz. 437, 440, 778 P.2d 1333, 1336 (App. 1989) (stating that "there are times when the issue of bad faith is not a question appropriate for determination by the jury.").

### III.  Punitive Damages

In a bad faith tort case against an insurance company, punitive damages may only be awarded if the evidence reflects "something more" than the conduct necessary to establish the tort.  Rawlings v. Apodaca, 151 Ariz. 149, 160, 726 P.2d 565, 576 (1986).  In Rawlings, the Arizona Supreme Court explained the parameters of punitive damages as follows:

> We restrict [the availability of punitive damages] to those cases in which the defendant's wrongful conduct was guided by evil motives. Thus, to obtain punitive damages, plaintiff must prove that defendant's evil hand was guided by an evil mind. . . . [P]unitive damages will be awarded on proof from which the jury may find that the defendant was 'aware of and consciously disregard[ed] a substantial and unjustifiable risk that' significant harm would occur.

1   151 Ariz. at 162, 726 P.2d at 578 (citations omitted).  Summary judgment for defendant on

2   the issue of punitive damages must be denied if a reasonable jury could find the requisite evil

3   mind by clear and convincing evidence; summary judgment should be granted if no

4   reasonable jury could find the requisite evil mind by clear and convincing evidence.

5   Thompson v. Better-Bilt Aluminum Prod. Co., 171 Ariz. 550, 558, 832 P.2d 203, 211 (1992).

6   The court construes the evidence and all reasonable inferences drawn from the evidence in

7   a light most favorable to the non-moving party.  Id.

**DISCUSSION**

I.  Bad Faith

State Farm moves for summary judgment on El Capitan's bad faith claim contending

that its investigation was thorough, prompt, and reasonable, that it reasonably evaluated,

promptly handled, and paid El Capitan's insurance claim.  (Doc. 41 at 6-15.)   Based on the

material facts, State Farm contends that El Capitan fails to show that it unreasonably

evaluated or handled this claim. (Id. at 15.)

El Capitan argues that its bad faith claim is not subject to summary judgment because

State Farm did not conduct an adequate investigation and deliberately ignored roof damage

evidence that contradicted their adjuster's findings.  (Doc. 49 at 4-9.)  Because State Farm's

investigation was inadequate, El Capitan contends State Farm cannot rely on a fairly

debatable defense or otherwise be entitled to summary judgment. (Id. at 4.)  El Capitan

further argues that State Farm failed to investigate and reconcile the gaping differences

between the scope of loss it evaluated and El Capitan's evaluation of loss.  (Id. at 8-9.)

Finally, El Capitan offers its expert report concluding that State Farm's claim handling was

carried out in bad faith.  (Id. at 9-10.)

State Farm did not move for summary judgment on El Capitan's breach of contract

claim. Thus, whether or not State Farm breached the insurance contract by devaluing El

Capitan's claim will be set for trial.[5]  At issue is whether State Farm is entitled to summary

---

28   [5]Both parties submitted expert reports and testimony regarding valuation of El Capitan's storm damage. (State Farm, Doc. 42-1 at 85-93.) (Regarding El Capitan's report,

judgment on El Capitan's bad faith claim. In the arena of insurance bad faith, an insurer acts in bad faith when it unreasonably investigates, evaluates, or processes a claim (an "objective" test), and either knows it is acting unreasonably or acts with such reckless disregard that such knowledge may be imputed to it (a "subjective" test). Nardelli, 230 Ariz. at 597-98, 277 P.3d at 794-95. Both the objective and subjective elements of bad faith are applied to the insurer's evaluation of the claim and to the insurer's claims handling process. Id. Thus, in order to establish bad faith, a party bears the burden of proving both the objective and subjective prongs of bad faith. In order to establish its bad faith claim, El Capitan alleges that State Farm's investigation was inadequate and that it did not properly attempt to reconcile the scope of loss between the estimates provided by the insured and its own estimates.

*Adequate Investigation*

State Farm contends that its investigation was not just adequate, but thorough, prompt, and reasonable; and that it reasonably evaluated, promptly handled, and timely paid the insured's claim. (Doc. 41 at 8-15.)

El Capitan alleges that State Farm's initial adjuster, Christina Wagner, was not properly trained to evaluate roofing problems. (Doc. 49 at 5.) For instance, Ms. Wagner testified that she did not understand the function of granules on a composite roof shingle. (Id., citing Doc. 50-2 at 4.) When she was asked to explain the function of granules, she responded, "[t]hey protect and provide a way to properly shed water off a roof." (Doc. 50-2 at 4.) When asked whether granules served any other function, Ms. Wagner responded, "I don't know." (Id.) El Capitan further alleged that Ms. Wagner was unaware that the unsealing of shingles due to high wind is considered wind-induced damage. (Doc. 49 at 5, (citing Doc. 50-2 at 5-6).) Based on El Capitan's allegation that Ms. Wagner lacked a basic working knowledge of roof systems and that she was unable to identify wind damage to shingle roofs, El Capitan contends that State Farm should have consulted with a qualified

the Court's courtesy copy of the exhibits in support of El Capitan's Statement of Facts includes Dr. Rajan's Roof Surface Inspection, which is missing from and not filed on CM/ECF. The Court will order El Capitan to file on CM/ECF a complete copy Dr. Rajan's Roof Surface Inspection.)

roofer or assign appropriate weight to a qualified roofer's findings.  (Doc. 49 at 5-6.)  El Capitan further alleges that State Farm refused its request for a second inspection and ignored the findings and damages estimate of Jasper Roofing, a qualified roofer.  (Id. at 6-7.) Therefore, El Capitan asserts that such is competent evidence of unreasonable conduct by State Farm precluding summary judgment.

State Farm assigned Ms. Wagner to El Capitan's claim. (Doc. 42-1 at 15.) State Farm trained her to inspect for and identify hail and wind damage to property.  (Doc. 50-2 at 3.) Ms. Wagner conducted the first inspection on El Capitan's 11 buildings and wrote an estimate for hail and wind damage. (Doc. 42-1 at 50-63.) Ms. Wagner's activity log shows that she drew a test square on each of the roof surfaces and noted the number of hail hits she found per test square on each roof with the designation "hl/sq." (Doc. 42-1 at 16-19; see also Doc. 42-1 at 66.) Ms. Wagner found hail damage, discussed those findings with the insured, and provided the insured with her report. (Doc. 42-1 at 18, 50-63.) Ms. Wagner also found wind damaged shingles. (Id. at 16-18.) Nevertheless, El Capitan asserts that Ms. Wagner did not find enough wind damaged shingles because she "was unaware that the unsealing of shingles due to high wind is considered wind-induced damage." (Doc. 49 at 5.) Ms. Wagner testified that when looking for wind damage she looks for unsealed shingles that have been flipped or creased or that have debris obstructing their ability to re-seal. (Doc. 42-1 at 66-67.) This is the same criteria used by Steve Rinks, the State Farm adjuster who conducted the second State Farm site inspection, along with a representative from Jasper Roofing. (Id. at 22-23; Doc. 53-1 at 10-12.) As to El Capitan's argument that Ms. Wagner is unqualified, Ms. Wagner's inspection for hail and wind damage was supported by the estimates of subsequent adjuster Rinks and by State Farm's retained roofing expert, Stephen Klingler, who reported less hail and wind damage than was found by Ms. Wagner. (Doc. 42-1 at 92.)

Although El Capitan argues that State Farm refused its request for a second inspection and ignored Jasper's findings and damages estimate, the evidence of record is otherwise. State Farm did not ignore Jasper's findings and estimate; rather, when State Farm received them, it set up a second site inspection and evaluation. (Doc. 42-1 at 21-24, 27-49.) Steve

Rinks, a State Farm adjuster, reviewed Jasper's findings and estimate, performed the second site inspection and evaluation, and forwarded its adjustment and further payment to the insured.  (Id. at 21-24, Doc. 53-1 at 10-12.)  At the second site inspection, Jasper had a representative who participated with State Farm.  (Id.)  Thus, the record shows that when State Farm was provided with Jasper's written estimate, State Farm gave the claim further consideration by conducting an additional second inspection for wind and hail damage. Moreover, after receiving AIS's estimate recommending roof replacement, State Farm retained an independent roofing expert, Stephen Klingler, to inspect the property and give the claim additional consideration in light of the new estimate submitted on behalf of El Capitan. (Doc. 42-1 at 24-25, 81, 85-99; Doc. 50-3 at 2-96.)

Based on these material facts, the Court does not find that State Farm conducted an inadequate investigation before valuing and paying El Capitan's claim.  Rather, the Court finds that State Farm conducted an adequate investigation and did not treat the insured unreasonably.  No reasonable juror could consider the material facts argued by El Capitan and conclude that State Farm's investigation was conducted in bad faith.  Although an incomplete pre-denial investigation can expose an insurance company to liability for bad faith, see Rawlings v. Apodaca, 151 Ariz. 149, 160, 726 P.2d 565, 576 (1986), no reasonable juror could consider the facts argued by El Capitan and conclude that State Farm's investigation and processing of this claim established a *prima facie* case of insurance bad faith.

*Scope of Loss*

Next, El Capitan argues that State Farm failed to investigate and reconcile the substantial difference between the scope of loss submitted by State Farm and that by El Capitan.  (Doc. 49 at 8-9.)

There can be no liability for bad faith if the insurer's actions (even if ultimately proven wrong) are "fairly debatable." See Trus Joist, 153 Ariz. at 104, 735 P.2d at 134. Here, the Court finds that State Farm did attempt to reconcile differences between the estimates of its adjusters and El Capitan's contractors.  At the first claim assessment, Rodney Belt from

Jasper joined State Farm's adjuster, Ms. Wagner. (Doc. 42-1 at 16.) During the inspection, Mr. Belt pointed to areas that he believed were hail damaged; Ms. Wagner examined those areas and exercised her own judgment to conclude that they were not hail damaged. (Doc. 53-1 at 14.) By listening to Mr. Belt, considering his point of view, and ultimately disagreeing with him about the scope of hail damage, Ms. Wagner made a fair and reasonable attempt to reconcile the contractor's opinion with her own estimate. After Ms. Wagner's estimate, Jasper forwarded their objection to Ms. Wagner's assessment. (Doc. 42-1 at 71.) Subsequently, State Farm received Jasper's estimate for a roof replacement. (Id. at 27-50.) Adjuster Rinks looked at Jasper's estimate before conducting the second inspection. (Id. at 157.) At the re-inspection, Mr. Rinks was again joined by a Jasper representative, and he offered that person chalk to allow them to tell him what they identified as hail and wind damage. (Doc. 42-1 at 156, Doc. 53-1 at 12.) Ultimately, Mr. Rinks did not agree with Jasper's damage assessment, but it was not for lack of trying to reconcile his opinion with Jasper. (Doc. 42-1 at 23.)

When El Capitan forwarded the AIS estimate, State Farm responded by offering El Capitan the additional consideration of a roofing expert investigation. (Doc. 42-1 at 24-25, 81, 85-99; Doc. 50-3 at 2-96.) Mr. Klingler reviewed AIS's estimate prior to conducting his inspection. (Doc. 42-1 at 96.) However, Mr. Klingler did not agree with AIS's recommended roof replacements and rendered a report consistent with his own opinion. (Id. at 85-93.) Mr. Klingler stated that he has personally performed roof repairs and warranties his workmanship on such repairs. (Doc. 42-2 at 7-8.) Further, he stated that spot repairs to a roof are common and are regularly warrantied by other roofers in the community.[6] (Id.)

The Court finds that State Farm gave El Capitan additional consideration at each point in the investigation. State Farm's additional consideration attempted to reconcile the differences between the roofing contractor's estimates and its own estimates. El Capitan has

---

[6] El Capitan's expert disagrees with State Farm's expert on this point. (Doc. 50 at 4.) However, this is not a material dispute as to the existence of bad faith. It is undisputed that State Farm engaged in these investigative and reconciling activities. The material dispute regards El Capitan's claim valuation.

1   not argued material facts precluding summary judgment on this point.  No reasonable juror

2   could conclude that despite the additional consideration given regarding the scope of loss,

3   State Farm's decision to pay based on its own estimates was evidence of a bad faith failure

4   to reconcile.

5           *Expert Report*

6           State Farm argues that El Capitan's expert report authored by Charles Miller is

7   inadmissible because the factual basis upon which his opinions rest are not supported by the

8   record evidence, and therefore lacks a sufficient factual basis.  (Doc. 41 at 8; Doc. 52 at 7,

9   (citing Fed. R. Evid. 702(b)).)  Consequently, Miller's report is merely conclusory statements

10  connected to the facts of this case only by his arbitrary and dogmatic assertions.  (Id. at 7.)

11          El Capitan contends that Mr. Miller's report is admissible because it is "based on [his]

12  own experience, observations and his studies . . ."  (Doc. 49 at 9.)  El Capitan further

13  contends that the factual basis of Mr. Miller's report goes to its weight and credibility, not

14  admissibility.  (Id.)

15          "A trial court can only consider admissible evidence in ruling on a motion for

16  summary judgment."  Orr v. Bank of America, 285 F.3d 764, 773 (9th Cir. 2002);  Rule

17  56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on

18  personal knowledge, set out facts that would be admissible in evidence, and show that the

19  affiant or declarant is competent to testify on the matters stated.").

20          The Court has reviewed Mr. Miller's report.  The Court may overlook the hearsay

21  status of an expert report on the grounds that the expert would be able testify to the contents

22  of the report at trial.  See Celotex, 477 U.S. at 324 (stating that a party need not produce

23  evidence in a form that would be admissible at trial in order to avoid summary judgment).

24  Although Mr. Miller outlined his belief as to what constitutes improper claims handling, Mr.

25  Miller did not connect his opinions with the facts of this case in order to support that State

26  Farm's claims handling conduct was motivated by bad faith.  In essence, Mr. Miller's report

27  merely states contrary opinions without factual predicates.  Nor does Mr. Miller find fault

28  with State Farm's methodology of evaluation.  Therefore, due to the lack of a factual basis,

1   Mr. Miller's report does not create a genuine issue for trial regarding El Capitan's contention
2   that State Farm engaged in bad faith.  See id. at 322 (stating that summary judgment is
3   appropriate against a party who "fails to make a showing sufficient to establish the existence
4   of an element essential to that party's case, and on which that party will bear the burden of
5   proof at trial").  Consequently, Mr. Miller's report does not preclude summary judgment.

6       II.  Punitive Damages

7       The Court will grant State Farm's motion for summary judgment precluding El
8   Capitan's bad faith claim.  Thus, El Capitan's only remaining claim will be one for breach
9   of contract.  El Capitan's contract claim is for reasonable cost of replacement regarding
10  alleged roof damage.

11      Under Arizona law, punitive damages cannot be awarded for breach of contract;
12  rather, punitive damages are only available when an action sounds in tort. See In re Marriage
13  of Benge, 151 Ariz. 219, 224, 726 P.2d 1088, 1093 (App. 1986) (explaining that "punitive
14  damages  may  not  ordinarily  be  assessed  in  contract  actions"  but  that  they  "may  be
15  recoverable  where  the  breach  of  contract  constitutes  a  tort");  see also  Lerner v.
16  Brettschneider, 123 Ariz. 152, 156, 598 P.2d 515, 519 (App. 1979) ( "[A]lthough punitive
17  damages do not lie for breach of contract, they are recoverable where the breach of contract
18  constitutes a tort.").

19      In this case, because the bad faith tort claim will be dismissed, the underlying breach
20  of contract claim will not support an award of punitive damages.  Therefore, the Court will
21  grant State Farm's motion for summary judgment on El Capitan's claim for punitive
22  damages.

23                          **CONCLUSION**

24      Accordingly, on the basis of the foregoing,

25      **IT IS HEREBY ORDERED** granting State Farm's motion for partial summary
26  judgment regarding bad faith and punitive damages.  (Doc. 41.)

27      **IT IS FURTHER ORDERED** that State Farm shall refile on CM/ECF a complete
28  copy of Document 42, Exhibits 5 and 6.

1    **IT IS FURTHER ORDERED** that El Capitan shall file on CM/ECF a complete copy

2    of Dr. Rajan's Roof Surface Inspection.

3    **IT IS FURTHER ORDERED** setting this case for a Final Pretrial Conference on

4    **Monday, June 2, 2014 at 2:30 p.m.** This matter appearing ready for trial, a Final Pretrial

5    Conference shall be held in Courtroom 401, Sandra Day O'Connor U.S. Federal Courthouse,

6    401 W. Washington St., Phoenix, Arizona 85003. The attorneys who will be responsible for

7    the trial of the case shall attend the Final Pretrial Conference. Counsel shall bring their

8    calendars so that trial scheduling can be discussed.

9    **IT IS FURTHER ORDERED** that, if this case shall be tried to a jury, the attorneys

10   who will be responsible for the trial of the lawsuit shall prepare and sign a <u>Proposed Pretrial</u>

11   <u>Order</u> and submit it to the Court on **Friday, May 16, 2014.**

12   **IT IS FURTHER ORDERED** that the content of the Proposed Pretrial Order shall

13   include, but not be limited to, that prescribed in the <u>Form of Pretrial Order</u> attached hereto.

14   Statements made shall not be in the form of a question, but should be a concise narrative

15   statement of each party's contention as to each uncontested and contested issue.

16   **IT IS FURTHER ORDERED** pursuant to Federal Rule of Civil Procedure 37(c) that

17   the Court will not allow the parties to offer any exhibits, witnesses, or other information that

18   were not previously disclosed in accordance with the provisions of this Order and/or the

19   Federal Rules of Civil Procedure and/or not listed in the Proposed Pretrial Order, except for

20   good cause.

21   **IT IS FURTHER ORDERED** directing the parties to exchange drafts of the

22   Proposed Pretrial Order **no later than seven (7) days before the submission deadline**.

23   **IT IS FURTHER ORDERED** that the parties shall file and serve all motions in

24   limine no later than **Friday, April 25, 2014.** Each motion in limine shall include the legal

25   basis supporting it.  Responses to motions in limine are due **Friday, May 9, 2014.** No replies

26   will be permitted.  The attorneys for all parties shall come to the Final Pretrial Conference

27   prepared to address the merits of all such motions.

28   **IT IS FURTHER ORDERED** directing the parties to complete the following tasks

by the time of the filing of the Proposed Pretrial Order if they intend to try the case before a jury:

        (1)     The parties shall <u>jointly</u> file a description of the case to be read to the jury.

        (2)     The parties shall <u>jointly</u> file a proposed set of voir dire questions. The voir dire questions shall be drafted in a neutral manner. To the extent possible, the parties shall stipulate to the proposed voir dire questions. If the parties have any disagreement about a particular question, the party or parties objecting shall state the reason for their objection below the question.

        (3)     The parties shall file a proposed set of <u>stipulated</u> jury instructions. The instructions shall be accompanied by citations to legal authority. If a party believes that a proposed instruction is a correct statement of the law, but the facts will not warrant the giving of the instructions, the party shall so state. The party who believes that the facts will not warrant the particular instruction shall provide an alternative instruction with appropriate citations to legal authority.

        (4)     Each party shall submit a form of verdict to be given to the jury at the end of the trial.

**IT IS FURTHER ORDERED** directing the parties to submit their proposed joint statement of the case, joint voir dire questions, stipulated jury instructions, and verdict forms.

**IT IS FURTHER ORDERED** that if the case will be tried to the Court, rather than to a jury, <u>instead of</u> filing a Proposed Pretrial Order, each party shall submit proposed findings of fact and conclusions of law by the same date the Proposed Pretrial Order is due.

**IT IS FURTHER ORDERED** that the parties shall keep the Court apprised of the possibility of settlement and should settlement be reached, the parties shall file a Notice of Settlement with the Clerk of the Court.

DATED this 14th day of March, 2014.

Stephen M. McNamee
Senior United States District Judge

1
2
3
4
5
6                    **IN THE UNITED STATES DISTRICT COURT**
7                        **FOR THE DISTRICT OF ARIZONA**
8
9    ,                                    )    No. CV -PHX-SMM
                                          )
10              Plaintiff,                )    **PROPOSED   PRETRIAL   FORM   OF**
                                          )    **ORDER**
11   vs.                                  )
                                          )
12                                        )
                                          )
13   ,                                    )
               Defendant.                 )
14                                        )
                                          )
15   _____ )

16          Pursuant to the Scheduling Order, the following is the joint Proposed Final Pretrial

17   Order   to   be   considered   at   the   Final   Pretrial   Conference   set   for

18   _____, _____ .

19       A.   **COUNSEL FOR THE PARTIES**

20            (Include mailing address, office phone and fax numbers).

21            Plaintiff(s):

22            Defendant(s):

23       B.   **STATEMENT OF JURISDICTION**.

24            Cite the statute(s) which gives this Court jurisdiction.

25            (e.g., Jurisdiction in this case is based on diversity of citizenship under Title 28

26            U.S.C. §1332.)

27            Jurisdiction (is/is not) disputed.

28

(If jurisdiction is disputed, the party contesting jurisdiction shall set forth with specificity the bases for the objection.)

C.  **NATURE OF ACTION**.

Provide a concise statement of the type of case, the cause of the action, and the relief sought.

(e.g., - This is a products liability case wherein the plaintiff seeks damages for personal injuries sustained when he fell from the driver's seat of a forklift. The plaintiff contends that the forklift was defectively designed and manufactured by the defendant and that the defects were a producing cause of his injuries and damages.)

D.  **CONTENTIONS OF THE PARTIES**.

With respect to each count of the complaint, counterclaim or cross-claim, and to any defense, affirmative defense, or the rebuttal of a presumption where the burden of proof has shifted, the party having the burden of proof shall list the elements or standards that must be proved in order for the party to prevail on that claim or defense. Citation to relevant legal authority is required.

(e.g., In order to prevail on this products liability case, the plaintiff must prove the following elements . . . .

In order to defeat this products liability claim based on the statute of repose, the defendant must prove the following elements . . . .)

E.  **STIPULATIONS AND UNCONTESTED FACTS**

1. The following facts are admitted by the parties and require no proof:

2. The following facts, although not admitted, will not be contested at trial by evidence to the contrary:

F.    **CONTESTED ISSUES OF FACT AND LAW**

1. The following are the issues of fact to be tried and decided: (Each issue of fact must be stated separately and in specific terms. Each parties' contention as to each issue must be set forth with respect to each and every issue of fact). E.g., Issue # 1: Whether Plaintiff used due care.

> Plaintiff Contends: Plaintiff looked both ways before stepping into the street . . . .

> Defendant Contends: Plaintiff was chasing a ball and darted out into the street without looking . . . .

2. The following are the issues of law to be tried and determined: (Each issue of law must be stated separately and in specific terms. Each parties' contention as to each issue must be set forth with respect to each and every issue of law). E.g., Issue # 1: Whether Plaintiff's suit is barred by the doctrine of laches.

> Plaintiff Contends: . . .

> Defendant Contends: . . .

G.   **LIST OF WITNESSES**.

A jointly prepared list of witnesses and their respective addresses, identifying each as either plaintiff's or defendant's, and indicating whether a fact or expert witness, must accompany this proposed order. If a witness' address is unknown, it should be so stated. A brief statement as to the testimony of each witness must also be included. Additionally, the parties shall designate which witnesses (1) shall be called at trial, (2) may be called at trial, and (3) are unlikely to be called at trial.

Additionally, the parties shall include the following text in this portion of the Proposed Pretrial Order:

The parties understand that the Court has put them on notice that they are responsible for ensuring that the witnesses they want to put on the stand to testify

- 3 -

are subpoenaed to testify, regardless of whether the intended witness is listed as a witness for the plaintiff(s) or the defendant(s). Simply because a party lists a witness does not mean that the witness will be called. Therefore, a party should not rely on the listing of a witness by the opposing party as an indication that the witness will be called. To the extent possible, the parties shall stipulate to the witnesses who will be called to testify.

H.   **LIST OF EXHIBITS**.

1. The following exhibits are admissible in evidence and may be marked in evidence by the Clerk:

a. Plaintiff's Exhibits:

b. Defendant's Exhibits:

2. As to the following exhibits, the parties have reached the following stipulations:

a. Plaintiff's Exhibits:

b. Defendant's Exhibits:

3. As to the following exhibits, the party against whom the exhibit is to be offered objects to the admission of the exhibit and offers the objection stated beneath:

a. Plaintiff's Exhibits:

(E.g., City Hospital records of Plaintiff from March 6, 1985 through March 22, 1985. Defendant objects for lack of foundation because . . . . (the objection must specify why there is a lack of foundation)).

b. Defendant's Exhibits:

(E.g., Payroll records of Plaintiff's employer which evidences payment of Plaintiff's salary during hospitalization and recovery. Plaintiff objects on the ground of relevance and materiality because (the objection must specify why there is a relevancy or materiality problem)).

I.   **DEPOSITIONS TO BE OFFERED**.

The parties shall list the depositions to be used at trial. The portions to be read at trial shall be identified by page and line number. Counsel should note objections to deposition testimony by writing the objection in the margins of that portion of the text of the deposition to which the objection is made. Moreover, these objections shall be explained in this portion of the Proposed Pretrial Order. As is the Court's practice at trial, it is <u>not sufficient</u> for an objecting party to simply state perfunctory grounds for an objection (e.g., "hearsay" or "lack of foundation") contained in the Proposed Pretrial Order. Each party must explain the basis for each perfunctory objection (e.g., <u>why</u> it is hearsay, <u>why</u> it lacks foundation, <u>why</u> it is irrelevant).

J.   **MOTIONS IN LIMINE**. Motions in limine shall be served, filed, and responded to in accordance with the instructions contained in the Order Setting Final Pretrial Conference.

K.   **LIST OF ANY PENDING MOTIONS**

L.   **PROBABLE LENGTH OF TRIAL**

M.   **JURY DEMAND** - A jury trial (has) (has not) been requested. If a jury trial was requested, (indicate the appropriate selection):

1. the parties stipulate the request was timely and properly made;

2. the (Plaintiff or Defendant) contends the request was untimely made because: (explain why request was untimely); or

3. the (Plaintiff or Defendant contends that although the request for trial by jury was timely, the request is improper as a matter of law because: (indicate the legal basis why a jury trial would be improper).

For a Bench Trial

N-1. **PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW** shall be filed and served by each party in accordance with the instructions contained

- 5 -

in the Order Setting Final Pretrial Conference.

For a Jury Trial

N-2. **STIPULATED JURY INSTRUCTIONS, PROPOSED VOIR DIRE QUESTIONS, AND PROPOSED FORMS OF VERDICT** shall be filed in accordance with the instructions contained in the Order Setting Final Pretrial Conference.

O.   **CERTIFICATIONS**. The undersigned counsel for each of the parties in this action do hereby certify and acknowledge the following:

1. All discovery has been completed.

2. The identity of each witness has been disclosed to opposing counsel.

3. Each exhibit listed herein (a) is in existence; (b) is numbered; and (c) has been disclosed and shown to opposing counsel.

4. The parties have complied in all respects with the mandates of the Court's Rule 16 Order and Order Setting Final Pretrial Conference.

5. [Unless otherwise previously ordered to the contrary], the parties have made all of the disclosures required by the Federal Rules of Civil Procedure.

APPROVED AS TO FORM AND CONTENT:

_____     _____

Attorney for Plaintiff                              Attorney for Defendant

Based on the foregoing,

**IT IS ORDERED** that this Proposed Pretrial Order jointly submitted by the parties is hereby **APPROVED** and is thereby **ADOPTED** as the official Pretrial Order of this Court.

DATED this _____ day of _____, _____.

_____
Stephen M. McNamee
Senior United States District Judge